## In re BOARDMAN.

### (District Court, D. Massachusetts. May 23, 1900.)

BANKRUPTCY—ASSETS—LIFE INSURANCE POLICY.

An endowment policy of insurance on the life of a bankrupt, payable to him, or, in case of his death before its maturity, to his mother, if living, and, if not, to his assigns or legal representatives, has a cash surrender value, within the meaning of Bankr. Act 1898, § 70a, cl. 5, where the company issuing it offers to pay a sum in cash for its surrender, although it contains no provision requiring such payment, and passes to the trustee as assets, unless the bankrupt pays the surrender value, subject to such rights therein as may be established by the bankrupt's mother.

In Bankruptcy. On petition by bankrupt for the delivery to him by the trustee of a life insurance policy.

The following is the opinion of LEWIS G. FARMER, Referee:

On December 24, 1889, the Equitable Life Assurance Society of the United States issued to the bankrupt, in Cleveland, Ohio, its "free tontine" policy, No. 452,167, whereby, in consideration of an annual premium of one hundred twenty-one and $75/100$ dollars ($121.75), it promised to pay either to him, his executors, administrators, or assigns, on the 23d day of December, 1909, or, should he die before, then to his mother, Flavilla T. Boardman, if living,—if not, then to him, his executors, administrators, or assigns,—at the office of the society, in the city of New York, twenty-five hundred ($2,500), upon satisfactory proofs of his death; and the same has been delivered to the trustee, who retains it in his possession, claiming that it has a cash surrender value, which he is entitled to receive before delivering the policy to the bankrupt. The trustee has received from the actuary of the society the following communication:

"Dear Sir: On return, with proper release, of policy No. 452,167, on the life of Boardman, on Nov. 1, 1899, or within six months thereafter (if premiums be paid to Dec. 23, 1899, and the premiums due on said date not paid), we will pay in cash the sum of six hundred ninety-two and $50/100$ dollars ($692.50), or give paid-up policy for fixed amount of twelve hundred and fifty dollars ($1,250); but, unless otherwise expressly agreed, this offer will not be binding after the termination of the said six months. These values are inclusive of all dividends."

This communication was inclosed in a letter from said actuary to the trustee, in which it was stated that, if the policy should be surrendered for cash, the receipt should be signed by the life assured, and also by the beneficiary; and it appears that the beneficiary, so called (that is, the mother of the bankrupt), refuses to sign such a receipt. The bankrupt also claims that the policy has no cash surrender value, within the meaning of the bankruptcy act, and has filed a petition that the trustee be ordered to deliver the policy to him. After hearing the trustee and the bankrupt's attorney upon this petition, I filed the following memorandum, ordering that the same be denied:

I think that this policy has a "cash surrender value," within the meaning of the bankruptcy act. I do not find that there is any exact definition of this term, as a matter of judicial determination, but it seems to me to mean the sum the company will pay upon the surrender and discharge of the policy; and it makes no difference whether the amount is an arbitrary one fixed by the stat-

ute, or one settled by the terms of the policy, or merely a voluntary matter on the company's part. In re Grahs, 1 Nat. Bankr. N. 164, 1 Am. Bankr. R. 465. If this amount is payable to the bankrupt, his estate, or his personal representatives, then the trustee is entitled to the policy, as a part of the assets of the estate, unless such an amount is paid by him to the trustee, as provided by section 70 (5). This question appears to be governed by the following decisions: In re Lange, 1 Nat. Bankr. N. 60, 1 Am. Bankr. R. 189, 91 Fed. 361; In re Grahs, 1 Nat. Bankr. N. 164, 1 Am. Bankr. R. 465; In re Steele, 2 Nat. Bankr. N. 281, 3 Am. Bankr. R. 549, 98 Fed. 78. In re Hernich, 1 Am. Bankr. R. 713, is opposed to the above decisions, but I must regard their weight as controlling. In re Buelow, 2 Nat. Bankr. N. 230, 3 Am. Bankr. R. 389, 98 Fed. 86, it did not appear what the terms of the policies were; and the decision of the referee In re Diack, 2 Nat. Bankr. N. 354, is opposed to that of Judge Thomas in the same case. See, also, Brigham v. Insurance Co., 131 Mass. 319; Pierce v. Insurance Co., 138 Mass. 151. I think, therefore, that the trustee is entitled to the possession of the policy as an asset of the estate, redeemable in the manner provided by the act. It may be that the bankrupt's interest in it is so involved with the rights of his mother that it cannot be reached by the trustee, but that question must be determined in another tribunal.

Upon petition by the bankrupt the question presented by the foregoing petition was certified to the court.

Walter N. Buffum, for petitioner.

Frederic F. Haskell, trustee, pro se.

LOWELL, District Judge. In this case I agree with the referee. The policy has a cash surrender value within the intent of the statute. The fact that this value is not stated in the policy is immaterial. If in the ordinary course of business the bankrupt can obtain cash from the company by a surrender of the policy, his creditors are entitled to the cash. Again, I think the interest of the bankrupt's trustee is not defeated by the claim of Mrs. Boardman, though I am not required to determine at the present time precisely what Mrs. Boardman's rights are. In addition to the cases cited by the referee, see In re Diack (D. C.) 100 Fed. 770. In that case the policy was issued by the company which issued the policy in the case at bar. The policy was payable in 15 years to the bankrupt, "should he then survive, or, should he die before, then his wife, Susan M. Diack, if living; if not, then to the said William Diack's executors, administrators, or assigns." This is substantially the language used in the Boardman policy. Some of the premiums were paid by Mrs. Diack, and so she was held entitled by the law of New York to a contingent legal interest in the policy, and could not be required to surrender her interest therein. The bankrupt was therefore ordered to execute an assignment to the trustee of his interest in the surrender value of the policy. The learned judge thus treated the trustee as having some rights in the proceeds of the policy. With this case I agree, rather than with In re Hernich, 1 Am. Bankr. R. 713, if, indeed, the note to that case correctly states Judge Morris' opinion. If the trustee in this case is entitled to the whole or part of the value of the policy, he cannot be compelled to deliver it up to the bankrupt. The decision of the referee is therefore affirmed.