In re COHEN.

(District Court, S. D. Georgia, Albany Division. February 23, 1916.)

1. INSURANCE ⊜⟶116(2, 4)—LIFE INSURANCE—INSURABLE INTEREST.

A wife and children have an insurable interest in the life of the husband and father.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 159, 161; Dec. Dig. ⊜⟶116(2, 4).]

2. BANKRUPTCY ⊜⟶143—TRUSTEE—PROCEEDS OF LIFE POLICY—RIGHT TO.

Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), declares that the trustee of a bankrupt shall be vested, save as to exempt property, with title to all property which prior to the petition the bankrupt could have transferred, or which might have been sold under judicial process against him, provided that, when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representative, he may, within 30 days after the cash surrender value has been ascertained, pay or secure to the trustee the sum so ascertained, and hold the policy free from the claims of the creditors; otherwise, the policy shall pass to the trustee as assets. To a bankrupt residing in Georgia three life policies had been issued, and in each case the wife of the bankrupt had been designated as beneficiary. The right to change the beneficiary was reserved to the insured, and as to one of the policies the insurer had consented to the designation, but as to the others no assent appeared. Park's Ann. Code Ga. § 2498, declares that the insured may direct the proceeds of a policy to be paid to his personal representatives or to his widow, and upon such direction, given and assented to by the insured, no other person can defeat the rights of the same, but the assignment is good without such assent. Held, that as the bankrupt's wife had an insurable interest in his life, and as assent by the insurers could in all cases have been compelled, the trustee was not entitled to the cash surrender value of the policy as against the wife, notwithstanding the insured might have changed the beneficiary, for he had not done so.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⊜⟶143.]

3. BANKRUPTCY ⊜⟶143—TRUSTEE—PROCEEDS OF LIFE POLICY—RIGHT TO—"CASH VALUE."

In such case, in view of the fact that the "cash value" of a policy represents the amount set aside each year by the company to provide a sinking fund, which will amount to the face of the policy and discharge it at the end of the period of insurance, and that Park's Ann. Code Ga. § 2993, declares that a wife shall not be liable for her husband's debts, the trustee in bankruptcy cannot, regardless of the Georgia statute relating to exemption of life policies, claim the proceeds as against the wife, particularly as a court of equity will consider the purpose of life insurance and aid a dependent wife.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⊜⟶143.

For other definitions, see Words and Phrases, First and Second Series, Cash Value.]

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the bankruptcy of A. S. Cohen, the trustee contended that he was entitled to the cash value of policies on the life of the bankrupt payable to the latter's wife. The referee found that, of three policies, the trustee was entitled to the cash value of only two, and both the bankrupt and the trustee filed petitions for review. Referee's order, in so far as it was in favor of trustee for two policies, reversed; otherwise, affirmed.

Pope & Bennet and Peacock & Gardner, all of Albany, Ga., for trustee.

Pottle & Hofmayer, J. W. Kieve, and W. W. Crews, all of Albany, Ga., for bankrupt.

SPEER, District Judge. The bankrupt in this case has three life insurance policies, two in the Penn Mutual, and one in the New York Life, Insurance Companies. These were issued about the year 1901. At the date of bankruptcy the beneficiary designated in each policy was the wife of the insured. This designation had been recorded some five years prior thereto. The right to change the beneficiary was reserved to the insured under all three policies. This appears from a designation in the wife's favor made by the insured, and assented to by the company, in the case of the New York Life policy. There were assignments to the wife of the other policies. In both the designation and the assignments the right to change the beneficiary was reserved. It has been ascertained that at the date of adjudication the New York policy had a cash value of $437, and that the Penn Mutual policies had cash values of $644.12 and $322.09, respectively.

The trustee, relying upon section 70a of the Bankruptcy Act, filed his petition to require the bankrupt to pay into court the cash value of these policies, to be administered as assets of the bankrupt. The petition was heard by the referee, and he held that the trustee was entitled to the cash values of the Penn Mutual policies, but was not entitled under the New York Life policy. He distinguishes substantially because, in the New York Life policy, the designation of the beneficiary was assented to by the company. This, he holds, under the Georgia law, exempts it from the claim of the trustee, The Penn Mutual policies, while showing a designation of the wife as beneficiary by the insured, did not show the assent of the insurance company. For this reason he holds that the cash values of the latter policies are not within the effect of the Georgia statute. Petitions for review were filed in behalf of the trustee, and in behalf of the bankrupt.

[1, 2] The essential facts are undisputed. The question turns upon the effect of the Georgia statute referred to, when construed in connection with the relating provision of the Bankruptcy Law. The Georgia Code section is as follows:

"The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or * * * assignees; and upon such direction given, and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent." Park's Annotated Code of Georgia, § 2498.

Now, the Bankruptcy Law (section 70a) applying to this question is as follows:

"(a) The trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt; * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

In the application of this language to the facts of the case it is essential to inquire, first, whether the bankrupt had title to the cash value of the policies; second, whether, construed in pari materia with the Georgia statute, Cohen had the power to transfer his interest to such cash values therein; again, whether they might have been levied upon and sold under judicial process; and, again, whether there was, in the language of the act, "a cash surrender value payable to himself, his estate, or personal representatives." We think that all these questions should be answered in the negative. The provision of the Bankruptcy Law above quoted must be held to relate to policies to which the bankrupt had title, or which he could have transferred, or which might have been levied upon and sold under judicial process. It can have no relation to a policy of which he has made his wife beneficiary, and where the state law protects her beneficial interest. Here the legal title was in the wife.

It is urged that he could have changed the beneficiary. If this be possible, in view of the Georgia statute, he had not done so on the date of adjudication; he had directed, years before bankruptcy, that the proceeds of the policies be paid to his widow, and while it does not appear that this direction had been assented to by the Penn Mutual Company, no reason appears why they should not have assented, and the assent might have been compelled. "Id certum est quod certum reddi potest." Besides, the explicit language of the Code is that the assignment is good without such assent. Can it be said, then, that the right to the cash value could have been transferred or levied upon, and sold under judicial process, and could, at the date of adjudication, have been made available for creditors? There are authorities which seem to answer this in the affirmative. See In re Herr (D. C.) 182 Fed. 716; In re Diack (D. C.) 100 Fed. 770; In re Boardman (D. C.) 103 Fed. 783; In re Coleman, 136 Fed. 818, 69 C. C. A. 496. But it will be found, we think, that these precedents relate to the proceeds of the policy, where the bankrupt or his legal representative was the beneficiary, or that the decisions were rendered in states where no such conclusive protection was thrown around the designation of the widow and children, as beneficiaries, as that afforded by the law of Georgia.

Where there is no fraud, and where the designation of the beneficiary is made several years before bankruptcy, indeed, if made in good faith more than four months before bankruptcy, in the language of

the Georgia law, "no other person can defeat the same." This language is imperative, and seems to throw an impregnable defense around the designated beneficiary. This, of course, where there is an insurable interest, as in the case of the wife and children. The language, "no other person can defeat the same," imports, we think, that no creditor can defeat the same, nor can the trustee do so.

Reliance is placed by the trustee upon the obiter of Chief Justice Lumpkin in Grenville v. Crawford, 13 Ga. 355. There a policy had been assigned to a creditor for debt, with the stipulation that, in event of the death of the insured, the proceeds of the policy should be first subjected to the debt of the assignee, and the balance to be turned over to the wife as beneficiary of the insured. There was, however, in that case, no contest as to the right of the creditor; but Chief Justice Lumpkin seemed to distinguish the rights of a creditor as superior to the right of the beneficiary of the policy. Section 2498 of the Code is clearly traceable to this case. Thomas R. R. Cobb, the famous codifier, was careful to incorporate the principle for the protection of the wife and children, but as carefully omitted to include the obiter of the great Chief Justice. The language of the section has remained unchanged in each of the numerous successive re-enactments of the Code; and we therefore conclude that in Georgia the language, "no other person can defeat," imports that the trustee in bankruptcy cannot defeat.

The question is without precedent, for the learned counsel for the trustee and the wife of the bankrupt have been unable to call attention to a case where this section of the Code has been construed in connection with 70a of the Bankruptcy Act, supra. In all the cases cited, where after death the proceeds of the policies were claimed by creditors and by the wife, when she was beneficiary, the wife has prevailed. In some states, statutes of exemption provide for the contingent intervention of bankruptcy; but section 2498 of the Code of Georgia, under consideration, makes no mention of bankruptcy.

[3] Aside from the Georgia statute, an important consideration depends upon the nature of the cash value of a policy of insurance, where a beneficiary with an insurable interest is other than the person insured. This represents the amount set aside each year by the company to the account of that particular policy. This is done to provide a sinking fund, which will amount to the face of the policy and discharge the same at the end of the period of insurance. That end is the probability of the death of the insured. This is calculated from the mortality tables, in view of the expectancy of life; that is to say, the period of his natural life, beginning with the inception of the insurance. The sums set aside from year to year for this purpose will ordinarily equal the amount for which the insurance policy is made. When the proceeds of the policy, by the designation of the insured, are to be paid to the wife upon death of the insured, in view of this system of the insurance company, the wife, who is beneficiary, has acquired a vested interest in this sinking fund, or reserve, as it is termed by the insurance companies. Its sum total constitutes the amount to be paid her in the event of her husband's death. If the

Georgia statute above cited does not forbid it, her interest might have been divested by another designation. This, however, he did not make.

The policy and all its values were hers at the time of bankruptcy. Her right is as strong as if the policy had been originally taken out in her name, with the reserved right to change the beneficiary, when no such change had been made. In such case it can scarcely be contended that against such right the creditors could have prevailed. The right is hers. Therefore, if the bankrupt in this case should be compelled by the court to withdraw this reserve, which has accumulated at this time, it will diminish the amount which will be paid to his widow at the date of his death. It therefore would make the widow pay the trustee for the benefit of the husband's creditors. In other words, it would make her responsible pro tanto for her husband's debts, which is contrary to the policy of the state. Georgia Code, § 2993. Again, the basic principle of life insurance is protection for those dependent upon the insured—primarily, his wife and children; and if his creditors, when his wife and children are designated as beneficiaries, because of bankruptcy, are to be permitted to deprive those who are otherwise helpless of this protection, the main purpose of insurance would be frustrated. Of course, this principle will not apply where the policy is payable to his legal representative.

While it is true that the law of Georgia is not as explicit as the law of some of the states for the protection of the widow, for the reasons above given, we think it is substantially effective to that end. And moreover, the bankruptcy court is a court of equity, and the fact that the widow to be has a vested interest in the cash value of the policy, that is to say, the reserve, appeals strongly to the court, particularly its duty as a court of chancery to protect the widow and the orphan. While the interest of the wife is, of course, contingent upon death as already stated, the withdrawal of the cash surrender value at the adjudication would subtract the amount from the total of that interest. It might, indeed, occasion the greatest hardship. The expectancy of the insured, for instance, might be 37 years. He might have carried a policy for 35 or 36 years. The cash value of such a policy, carried for so long, would practically amount nearly to its face value. Then, should bankruptcy intervene, and the cash value be withdrawn, the purpose of his life, extending over the period of a generation, to protect his wife and children by insurance, would be wholly defeated, for the remnant she would draw at his death would be of little value.

It follows that our conclusion is that in so far as the ruling of the referee is favorable to Mrs. Cohen it is sustained, and in so far as it is unfavorable to her it is reversed. Decree will be taken accordingly.