73124. REPUBLIC INSURANCE COMPANY v. MARTIN et al.
(355 SE2d 694)

BEASLEY, Judge.

Martin, his ex-wife Johnson, and their daughter Crawford filed suit against Republic Insurance Company to recover the proceeds of a fire insurance policy which insured real property once the marital residence of Martin and Johnson and which subsequently was destroyed by two fires. Crawford joined in the suit because she claimed entitlement to recover the insurance proceeds from her father as transferee of her mother's rights under her parents' divorce decree.

The plaintiffs sought recovery under the policy plus statutory penalties for bad faith and attorney fees based upon Republic's having lulled them into believing that it would pay the fire insurance claim until such time as the policy's statute of limitation on actions had run and then refusing to pay the claim. The case went to trial by jury and after the court directed a verdict in favor of Martin and Johnson on the issue of insurable interest, the jury returned a verdict for plaintiffs in the amount of $26,000 actual damages, $6,500 bad faith penalty and $4,780 attorney fees; the court entered judgment on the directed verdict and judgment on the jury award of $37,280 plus interest and costs of the action.

The insurer brings the present appeal from the denial of its amended motions for new trial and for judgment notwithstanding the verdict.

1. Republic challenges the standing of Martin, Johnson, and Crawford to file a claim for the insurance proceeds. The insurer maintains that at the time of the fires Martin had no insurable interest in

the property, having conveyed his interest to Johnson in the prior divorce settlement, that although Johnson was the owner of the property at the time of the fires she was not the named insured or otherwise insured under the policy because there was never any endorsement making her such, and that because Johnson had no claim under the policy, there was no valid transfer of rights under the policy from Johnson to daughter Crawford.

Construing the evidence in favor of the verdict, *Progressive Rural &c. Co-op v Austin*, 179 Ga. App. 84 (345 SE2d 113) (1986); *Springfield Ins. Co. v. Harris*, 106 Ga. App. 422 (126 SE2d 920) (1962), the following scenario gave rise to the present litigation:

Martin purchased the subject property in 1966 and executed a deed to secure debt in favor of Advance Mortgage Corporation to secure a loan made for the purchase. In 1967, Advance transferred its note and security deed to the Bronx Savings Bank. Later, Martin secured a second loan from AVCO Finance to make improvements on the property. On January 26, 1977, Martin and his wife executed a divorce settlement which provided that contemporaneously with the divorce decree, Martin was required to convey by quitclaim deed all title and interest in the marital residence to the wife. Martin executed the quitclaim deed on February 11, but it was never recorded or given to Martin's ex-wife. The decree which incorporated the settlement was entered on February 16. The fires which destroyed the residence occurred on November 22 and 27, 1978. At the time of the fires, the property was insured for such loss by Republic under a policy bearing Martin as the named insured.

Martin was not then living on the premises but was paying the premiums on the insurance and was obligated to make the installments on the second note to AVCO. The house was being occupied by the Martins' daughters who were making the payments on the note to Advance as their rental obligation to their parents.

On November 21, just prior to the first fire and at the request of Johnson's attorney, Martin's insurance agent directed Republic to endorse the fire insurance policy on the property to reflect Johnson as the named insured, effective on that date. Shortly after the fires, Republic conducted an investigation and examination of the premises. On November 22, and November 29, it secured the signatures of mother, father and daughter on non-waiver agreements. Then on the 30th, it mailed Martin a notice of policy cancellation *effective January 1, 1979.* The stated reason for the cancellation was that the property was not owned by Martin, the named insured. Apparently subsequent to the fires but prior to filing suit (this conclusion as to timing is derived from a reasonable construction of the record favorable to the verdict, there being no direct evidence of an exact date), the mother, Johnson, executed a quitclaim deed to the property in favor

of the parties' eldest daughter, Crawford. The deed stated that its purpose was to release any and all interest that Johnson had in the property to the daughter.

In August 1979 Republic paid Eastern Savings Bank (formerly Bronx Savings Bank) c/o Advance Mortgage Corporation in exchange for an assignment of the note and deed to secure debt originally given to Advance. The insurer never refunded any portion of the premiums to Martin, never formally by letter or otherwise denied any claims by Martin, Johnson, or Crawford prior to 1982, nor did it make any payment whatsoever to the parties for the fire loss, principally upon the bases on which it still relies, i.e., no insurable interest or contractual obligation to father, mother, or daughter.

By virtue of the quitclaim deed to his ex-wife as well as by the divorce decree itself, *Richardson v. Park Ave. Bank*, 173 Ga. App. 43 (325 SE2d 455) (1984), Martin was divested of equitable title to the property, the legal title still being held by Advance and AVCO. But "title is not the sole test for determining an insurable interest. It may be a special or limited interest, disconnected from any title, lien or possession, whereby the holder of the interest will suffer loss by its destruction, etc., and that will entitle him to protect the interest by insurance. [Cits.]. . .

"Whether owned or non-owned, the insured must have an insurable interest in the subject matter of the contract, . . ." *Gordon v. Gulf American &c. Co.*, 113 Ga. App. 755, 760 (2) (149 SE2d 725) (1966); see also *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589 (307 SE2d 107) (1983). " '[I]nsurable interest' means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4.

Under this standard, while it is clear that Martin no longer had equitable *title* to the property, it is also clear that he retained an equitable *interest* in it because of his continuing liability on and payment of the second priority note to AVCO. Though Martin had given a written statement to the insurer on November 29, 1978, that AVCO had been fully paid, this was not the case. A letter from the insurer's own attorney, dated January 23, 1979, stated that checking with AVCO revealed that Martin had not fully paid the debt. Moreover, the only evidence of release of AVCO's interest in the property for satisfaction of the debt is a quitclaim deed executed in April 1982, by AVCO in favor of Martin and Crawford.

"The grantor in a deed to secure debt retains the right of possession and the right of redemption by payment of the debt, and consequently, an equitable interest in the property which may be assigned or subjected to payment of his debts. [Cits.]" *Pendley v. Brooks*, 119 Ga. App. 268, 270 (166 SE2d 898) (1969). Inasmuch as this is so,

though what title Martin possessed passed to Johnson, he could still have suffered a direct pecuniary loss on the property, see *Cherokee Ins. Co. v. First Nat. Bank*, 181 Ga. App. 146, 147 (351 SE2d 473) (1986), because he was still liable on the second priority note which was secured by the property.

Furthermore, the insurer itself negates its assertion of no contractual liability to Martin by its steadfast contention that Martin remained the sole named insured under the policy.

It is clear from the evidence that Johnson, too, had an insurable interest in the property at the time of the fires through her acquisition of equitable title to the residence. In addition, the insurer had a contractual obligation to her because prior to the fires, affirmative steps were taken to change the named insured from Martin to her, and the insurer by its agent represented in writing that the change would be effected by way of endorsement, although before the formal change was made on the policy it was cancelled by the insurer following the fires. Under these circumstances, there was evidence of a valid change of the named insured to Johnson. See *Maxwell v. Britt*, 171 Ga. App. 230 (319 SE2d 88) (1984). Even if the policy had not been transferred to Johnson, this would not affect her insurable interest by virtue of her equitable title to the property so that she would be divested of any entitlement to proceeds under the policy. This would be equally true in regard to Martin, that is, an effective transfer of the policy over to Johnson did not divest him of his insurable interest in the property.

As to the daughter, she had acquired an insurable interest in the property by the quitclaim deed to her from her mother prior to suit. There is no dispute as to the appropriate execution and delivery of the deed. See *Barkley v. Nat. Security Fire &c. Co.*, 170 Ga. App. 17 (315 SE2d 923) (1984); *Barrett v. Simmons*, 235 Ga. 600 (221 SE2d 25) (1975). Nor is it disputed that the deed purported to quitclaim any interest whatsoever in the property held by the mother to the daughter. In addition, at the time of the fires, the daughter had an equitable interest and thus an insurable interest in the property in her own right not derivative of the mother's rights. This arose from her obligation on the first priority note to Advance which, although there may not have been a formal assumption of the note, is not disputed, coupled with her occupancy of the residence. *American Reliable Ins. Co. v. Woodward*, 143 Ga. App. 652 (239 SE2d 543) (1977); *Splish Splash Waterslides v. Cherokee Ins. Co.*, supra; *Pendley v. Brooks*, supra; see also *Townsend v. Morris*, 222 Ga. 242 (149 SE2d 464) (1966) as to the insurable interest of a lessee.

Furthermore, it is undisputed that the mother intended for the daughter to succeed to any benefits, which would include insurance proceeds from the fires, to which the mother would be entitled under

the insurance policy.

Thus, at the time of the fires, and consequently when the insurance policy was in full force and effect and should have covered the loss, both Martin and Johnson had insurable interests relating to the policy, and the trial court correctly directed a verdict on this issue.

2. Republic next maintains that the court should have dismissed the action for plaintiffs' failure to join a necessary party, namely Eastern Savings Bank as successor of the first priority security deed to Advance.

This question was not properly raised below nor ruled upon and thus we do not address it. We note, however, that prior to suit the interest of Eastern Savings Bank was bought by the insurer and the bank no longer had any interest in the property so as to render it a proper party to the suit. We also note that misjoinder of parties is not a ground for dismissal of an action. OCGA § 9-11-21.

3. The insurer further claims that there was no evidence of its bad faith so as to support the award of penalties and attorney fees.

" 'In an action to recover penalties and attorney fees for the refusal of an insurer to pay a claim it must be shown that the refusal was in "bad faith," [OCGA § 33-4-6, further citations omitted], and the burden is on the insured to show that such refusal was made in bad faith. [Cits.] "Bad faith" . . . means "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." [Cits.] . . .'

" ' "[T]he proper rule is that the judgment (for bad faith penalties and attorney fees) should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." ' " *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703 (1) (302 SE2d 605) (1983).

The evidence in support of the verdict, *Progressive Rural &c. Co-op v. Austin* and *Springfield Ins. Co. v. Harris*, supra, shows that the insurer had knowledge immediately after the fires of the potential insurable interests of the mother, father, and daughter; it procured their signatures on non-waiver agreements. The insurer made no effort to attempt to refund any premiums if indeed it believed that for some time it had no contractual obligation to Martin for lack of an insurable interest. It gave no reasonable explanation for not following through on its representation that it would change the named insured on the policy. Nor did it inform any of the parties that it would not pay the claim until well past the time for filing suit under the policy. In fact, the evidence supports the finding that the insurer alternately led the father and daughter, who inquired frequently about the status of the claim, to believe that the claim would be paid, until 1982, and thus lulled them into forbearing suit to protect their interests.

This authorized the jury to award plaintiffs bad faith penalties and attorney fees. See *International Indem. Co. v. Coachman*, 181 Ga. App. 82 (351 SE2d 224) (1986).

4. Any further claims by the insurer raised in its amended motions for new trial and for judgment notwithstanding the verdict have not been argued on appeal and therefore are deemed abandoned. Court of Appeals Rule 15 (c); *Turner v. Taylor*, 179 Ga. App. 574 (346 SE2d 920) (1986). Also, we note that the question of the proper allocation of the judgment among the plaintiffs is a question not before us.

5. Appellees have moved this court to impose upon appellant damages for a frivolous appeal pursuant to OCGA § 5-6-6. Inasmuch as "[i]t does not appear that there was any valid reason for the appellant to anticipate reversal of the superior court's judgment, . . . we must conclude that the appeal to this court was for the purpose of delay only. Accordingly, the appellee[s'] request for award of damages in the amount of 10 percent of judgment is granted." *Hanover Ins. Co. v. Scruggs Co.*, 162 Ga. App. 640, 641 (292 SE2d 493) (1982). The trial court is directed to enter an award of 10 percent damages in favor of plaintiffs upon the remittitur.

*Judgment affirmed with direction. Benham, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED MARCH 9, 1987 —
REHEARING DENIED MARCH 31, 1987 —

*Sam F. Lowe, Jr.*, for appellant.
*John E. Robinson*, for appellees.